## FIRE DEPARTMENT a. WILLIAMSON.

*New York Superior Court; General Term, November,* 1863.

NEW YORK FIRE LAWS.—VIOLATION.—FORM OF NOTICE.

The notice to be given to owners of buildings under Laws of 1862, ch. 365, in
case of inadequate safeguards against fire in New York city, must state the
infringement with sufficient precision to leave no doubt as to the alteration or
addition required.

A notice stating the defect in the alternative, is insufficient to ground an action
for a violation of this statute.

Form of notice discussed.

Appeal from an order sustaining a demurrer to the com-
plaint.

This action was brought by the Fire Department of the city of
New York against Richard Williamson, to recover a penalty of
$50 for a violation of the Fire Laws, applicable to the city of
New York.   The complaint set forth the plaintiff's incorpora-
tion, and averred in substance that defendant was the owner of
a dwelling-house within the building limits affected by the
law; that the building was six stories, and more than forty feet
high, and built to contain eight or more families above the first
story; that the house was not fire-proof, &c., and had never
been supplied with a fire-escape; that more than ten days had
elapsed since the personal service upon the defendant of a notice
to remove the violation.   The notice given was set forth in the
complaint; it required the defendant to remove the following
named violation of the law, to wit: " A six story dwelling-house
located on lots known as No. 22 and 24 Thames-street, occupied
by, or built to contain eight or more families above the first
story, and not provided with a practical fire-proof fire escape."

A demurrer to this complaint was sustained by Mr. Justice
Robertson (*Ante,* 195), and the plaintiff appealed.

*Wesley Gleason,* for the appellant.—I. The offence is the ex-
istence of a building of a certain character not having a fire-

escape. That which constitutes the offence is of a compound nature or character, and must possess several elements, losing one of which it ceases to be an offence. This combination of elements constituting the offence, the statute has denominated a "violation." (*Laws of* 1862, ch. 356, §§ 27, 37.) 1. The notice served, read in connection with the statute to which express reference is made, cannot mislead. That which is required to be removed is the "violation." It may be removed by depriving the object of any of the elements which make it a *violation*. The notice could not be understood as attempting to prescribe the method of removal, or to deprive the defendant of the election which the statute gives him. 2. It is said that the notice is in the alternative, and does not apprise the party of the precise nature of the violation, so that he may know what he has to do to remove it; the notice follows the language of the statute, and need not be more explicit. It might not be convenient for the public officer to ascertain and make oath what was the intention of the builder. It is a matter peculiarly within the knowledge of the owner. With this knowledge, he could not fail to determine, with certainty, whether the "violation" consisted in crowding too many families into the house and the absence of the fire-escape, or in its being "*built* to *contain*" more than eight families. The notice points out the "violation" with reasonable certainty. 3. The leading object of the statute is, to prevent the destruction of life and property by fire. Such construction should be given to it as will effectuate this object.

II. Beyond sections 37 and 39, there is no provision in the statute as to the form or substance of the notice of violation. It is clear that the statute does not, in terms, require the notice to describe the particular violation. When the party is notified that a "violation" exists upon certain property, owned by him, the statute is fully complied with. A general notice is sufficient. (Fire Department *a.* Buffum, 2 *E. D. Smith*, 511.)

III. This statute is remedial, and should be liberally and equitably construed, both as to the cases embraced in it, and the form of proceeding under it. (2 *E. D. Smith*, 511; Sickles *a.* Sharp, 13 *Johns.*, 497; *Bac. Abr.*, 251, 254.)

*Cummins, Alexander & Green*, for the respondent.—I. No

sufficient notice under section 37 was given. It is left uncertain in the notice whether the house was "occupied by," or "built to contain" eight or more families. As the process of removing the violation in the one case is entirely different from the mode in the other, it is necessary that the exact violation be pointed out, so as to enable the party notified to know what to do to remove the violation.

II. The notice requires defendant to remove the house, whereas the act only authorizes a notice to so alter or add to the house as to bring it within the terms of the act.

By the Court.—Moncrief, J.—The manifest intention of the Legislature, in requiring notice of violation or violations of the act "To provide for the Regulation and Inspection of Buildings, &c., &c." (passed April 19th, 1862), was to apprise the owner of the building of the non-compliance or violation of its provisions, to enable him at once to conform thereto. The notice, therefore, should direct his attention to the infringement complained of, with such a degree of certainty and precision as would leave no doubt as to the alteration or addition to be made upon his premises. The plaintiffs must be presumed to know whether the violation consisted of the defendant having a six-story dwelling-house, occupied by eight or more families above the first story, or his having a six-story dwelling-house, built to contain eight or more families above the first story, and not provided with a practical fire-proof fire-escape; or that the defendant had a six-story dwelling-house, either occupied by or built to contain eight or more families above the first story, and not provided with a practical fire-proof fire-escape. If the notice required by the statute can be satisfied by the suggestion to the owner that he has "violated" its provisions, and must remove the violation, a notice would seem to be unnecessary, as he must be presumed to know the law, and the situation and peculiarities of his premises. The reasons assigned by the learned judge at the special term, in my opinion, were abundant, and, to my mind, satisfactorily disposed of all questions as to the sufficiency of the complaint. The case in 2 E. D. Smith, 511, does not conflict with the views of the learned judge at the special term. In that case, "an addition" had been placed by the defendant upon his building, and the court

held that he could not have been misled, and must have known what was complained of from the notice he received to remove a piazza, &c. The argument of his counsel would seem to have been that because the addition to his building was called by the name of "a piazza," therefore the notice did not apprise him of the violation of the act; and the learned court suggest that the defendant might have required the judge to submit the question to the jury, with an instruction that if they believed from the notice and from all the circumstances in the case that the defendant was not apprised, and did not know what he was called upon to remove, that then the plaintiff could not recover, &c. (p. 518.) Judge Denio, in his opinion in favor of affirming the judgment of the Court of Common Pleas, says, "It is argued that the notice was insufficient, because it did not call the thing which the defendant was ordered to remove 'a building,' but denominated it 'a piazza.' The object was to give the defendant notice of what he was required to do, and the question was, whether the building was sufficiently described." Again, he says, "I am unable to see that it was possible for the defendant to be misled, and I am of opinion that the notice was sufficient."

Judge Mitchell, concurring in affirming the judgment, says, "The notice was such that no one could doubt what was intended."

These opinions confirm the views expressed in this case at the special term.

The order made at the special term should be affirmed.

ROBERTSON, J.—Provision may be made in any statute, either expressly or by strong implication, that those who would otherwise come within it may be excused by reason of ignorance of its provisions, either temporarily for a limited time or upon a contingency. This would seem to be eminently just towards owners of a species of property converted into a nuisance by statute. The same end may be accomplished by notifying such owners whenever such property offends the statute, and requiring them to get rid of the offensive quality. Future violators of the law are not entitled to be so leniently dealt with. If such property is a building of a peculiar character, which legally has previously been innoxious, and owned for many

years, there is no inducement for its owners to study new building laws. The conversion of such a building into a nuisance, subjecting its owner to punishment upon the instant of the passage of the statute, although it might be "*summum jus*," would be "*summa injuria*." But one who proposes to put up a building in a populous city is bound to make himself acquainted with all the laws in relation to such building, and if he violate any deserves immediate punishment.

The notice required by the 37th section of the statute to the owners of existing buildings is not only the basis of an action for a penalty, but is made by the 40th section one of the ingredients of an indictable offence, and therefore the same rule for construing any that may be given must be adopted in both cases. To determine the proper characteristics of such notice, its object must be ascertained. Until such notice is given, and the owner of existing buildings fails within the time fixed by it to remove the defect forbidden by statute, he is not made by it guilty of any offence. The existence of that defect may be a violation of the law, but the owner is not chargeable, civilly or criminally, until he fails to do away with it. The object of the notice, therefore, is not simply to notify the owner that he has been guilty of some violation of the law in regard to a certain building, but of the defect which, if unrepaired within a fixed time, renders him a wilful violator of the law. Otherwise, it would be sufficient to inform him of the provisions of the law, and let him discover which one he had violated. The terms of the statute are, that no penalty shall attach until a notice is given, requiring the removal of such violation. It therefore seems to be necessary to inform the owner of the nature of the violation, and so it was held in the case of the Fire Department *a*. Buffum (2 *E. D. Smith*, 511), which was affirmed in the Court of Appeals. The only question raised in that case was one of construction, whether the notice given did so or not. A notice which should specify that the owner had been guilty of some one of the violations mentioned in the statute, even if they were all enumerated, would be no better than a simple notice of violation of the act generally in regard to the building, leaving him to guess which one it was. The case of the future builders of illegal edifices is entirely different. Their offence is complete by the erection, the law is sufficient notice, and no

subsequent change can relieve them from the penalty and consequences, except the criminal prosecution provided for in section 40.

It seems, however, to be conceded that the notice must point out the defect, or violation as it is termed in the statute; the only difference of opinion seems to be as to what that violation consists of, it being intended that the want of the fire-escape alone constitutes such a violation. The omission to add something to a building of a particular kind can hardly comprise the whole description of a violation, when a like omission in regard to other buildings is not forbidden. Moreover, the defendant, if liable at all, must be so as one of the third class of persons, designated in the 37th section as persons who fail to comply with such act, who are to forfeit a certain sum for each "non-compliance," and not as one of the first or second classes, which consist of the owners of buildings "on which a violation of such act may be placed or shall exist," and "master architects who may be employed or assist therein." For the non-existence of a fire-escape can hardly be said to be "placed or exist on" a dwelling-house, and no one can very well be said to be employed or assist in not putting up one. The penalty was, therefore, not for a violation of, but a non-compliance with the terms of the act. That non-compliance consisted as much in the height, arrangement, or occupation of the building which had no fire-escape, as in the absence of the latter. The removal of the violation, or compliance with the act, could as well be effected by a change in the former as by the addition of the latter. The danger is equally removed, which is what the statute aims at accomplishing, and not at restricting the owner as to the mode in which he shall do it.

If the object of the statute were solely to promote the sale of fire-escapes, undoubtedly it might so be construed; but as the object seems to be to prevent overcrowding lofty buildings with tenants, without a means of escape in case of fire, the same object can be as effectually attained by lowering the buildings and diminishing the number of occupants. It is said that it is only the violation, and not the question of removal, which is at issue, to which I agree for the very reason that the owner is to have his choice as to the mode of removal; but one involves the other. I apprehend a mere notice to the defendant that he

has been guilty of a violation of the law by not having a fire-escape on a particular building would not be sufficient. If so, as he must be supposed to know there was no fire-escape, a notice that he had seven families in it would be equally sufficient, if it were the fact. That would make the Fire Department the judge, which ingredient in the so-called violation the offender should be called upon to correct. The Legislature, by making the height and internal arrangement or occupation, as well as fire-escapes, part of the standard of safety, enabled parties, by correcting any of such elements, to reduce the danger to that standard.

It is true, the defendant would not be misled by this notice as to his duty if the absence of a fire-escape constituted the whole of the violation; but he clearly would be, if there were any other elements in it whose removal would cause the violation to disappear. For that very reason, I deem it essential that an entire description of the violation should be given. It certainly would not be a sufficient description of the violation in the complaint, to allege that the defendant had a dwelling-house without a fire-escape, and leave him to prove it was *not* of the dangerous height or construction, or occupied by the forbidden number of families.

Of course the violation could be removed by levelling the building to the ground. Is not that equally as good a mode under the statute as putting on a fire-escape? And yet, under the construction contended for, it would not be.

I have not been able to discover in any of the considerations offered any reasons for changing my views at special term. I regret to have been so unfortunate as to have unintentionally expressed any intimation in giving those views that the statute did not apply to houses built as well as those to be built, in reference both to the character of the building and its occupancy, if that be at all material. My effort was only to point out by what different means a building could be made to comply with the statute, when built to contain six families, and when actually occupied by that number, although not so built, in order to illustrate the necessity of defining the evil to be remedied in the notice. It so happened that the notice in this case did define the violation as a building so built; but it added the alternative of being so occupied, leaving the defendant as much

in doubt as to what was complained of, as if it had said he violated the provisions of the act containing both offences. (§ 27.)

I, therefore, concur in affirming the judgment.

MONELL, J. (dissenting).—I entirely agree with my brethren that the "notice" required by the act under which this suit is brought is for the purpose of apprising the owner of the particular violation complained of. Any other construction of the act would do injustice to the intention of the Legislature. A person charged with an infringement of this law has a right, before he shall be subjected to its penalties, to have his attention called to the violation, that he may remove it, and save the penalty.

The 27th section of the act requires that all dwelling-houses that shall be occupied by or built to contain "eight or more families," &c., shall have placed therein a practical fire-proof fire-escape, that shall be approved, &c.

The 37th section provides that any person who shall violate any of the provisions of the act, or fail to comply therewith, shall forfeit and pay the sum of fifty dollars for each violation, provided that in all cases of violation that shall be in existence at the time the act took effect no penalty shall attach "until after notice of ten days shall be given, requiring the removal of such violation."

The 39th section prescribes the mode of serving the notice, and provides that it "shall contain a description of the building, premises, or property upon which such violation shall have been put, or may exist."

The notice served in this case required the owner to remove the following-named violation of the law (referring to the act by its title and date of passage), to wit: A six-story dwelling-house, located, &c., "occupied by or built to contain eight or more families above the first story, and not provided with a practical fire-proof fire-escape."

Every man must be taken to be cognizant of the law (*ignorantia juris non excusat*), and therefore the defendant is presumed to have known that every dwelling-house which had been erected in the city of New York prior to the passage of the act referred to, and which was built to contain eight or

more families, must be provided with a practical fire-proof fire-escape. He knew that the law required that his dwelling-house must be so provided, and that for every day it was left unprovided he was guilty of a violation of the law.

Although the penalty does not attach, or rather is not recoverable, until after ten days' notice of the violation and a neglect to remove it, still the violation was complete, immediately on the passage of the law, and except for the ten days' notice the defendant would have been immediately liable.

The defendant knowing the law, and that his dwelling-house must, to comply with the law, be provided with a fire-escape, omits to provide one, and thus violates the law. The penalty, however, does not immediately attach. The law requires that he shall be apprised of the violation, and shall have time given him to remove it.

The notice in this case required the removal of *a* violation of the law; and it is said the particular violation was not pointed out, so that the defendant was not apprised of what it consisted. Let us see. He knew what the law required in respect to his building, namely, to have a fire-escape placed therein. He was furnished with a description of his building, its location, and such facts as brought it within the provisions of the act requiring him to provide a fire-escape, and was *told* that his building was not provided with a fire-escape. Now the violation consisted in the *building* not being *provided* with a fire-escape; not in the defendant's not providing it. The *absence* of this protection to human life was the infringement; not any act of the defendant. Hence it was only necessary that wherein the building was deficient, should be pointed out, and that the defendant should know what he must do or promise to remove the violation.

I think it cannot be pretended that the notice in this case did not *distinctly* point to the deficiency in the defendant's building, which constituted the alleged violation. It did so, in so many words—A six story dwelling-house, " and *not provided with a practical fire-proof fire-escape.*"

It would be difficult to find language more appropriate or significant to discuss the particular violation.

It was said that the 27th section required other things beside a fire-escape, and that as the penalty might attach equally to them, more particularity was required. I do not see this. The

owner must have notice of *that* which constitutes the violation, and that is all. If the building is deficient of a "proper scuttle or other opening leading to the roof," the owner must have notice of this deficiency. If the "rooms on each floor do not connect by doors from front to rear," he must be apprised of this. If a "fire-escape" is not provided, he must have notice of that.

The learned justice, who decided the demurrer at the special term, was of opinion that the 27th section designates two kinds of violations—one arising from an omission to have certain things in buildings built to contain a certain number of families (by which, I understand him, buildings thereafter built); and the other from allowing any building destitute of those contrivances to be occupied by more than a certain number of families. The former violation he thinks can be terminated by supplying the deficiencies; the latter by *removing some of the families.*

I do not see that this construction can affect the question of actual violation: it is *the* violation, not how it may be removed that is at issue here; but I cannot yield to the soundness of such construction.

I think the plain language as well as the manifest intention of the Legislature, was to place all buildings *built* to contain, &c., whether before or after the passage of the law, within the requirements of the law. The words, "or built to contain," do not refer exclusively to subsequent erections, but to all buildings which had been built to contain, &c. Thus "all dwelling-houses already erected (or that may hereafter be built), that now are (or may be) more than forty feet high, that shall be occupied by or built to contain," &c.

The construction of the learned justice would entirely defeat the objects of the law in respect to every building erected before the passage of the act. For they might be and continue deficient of all that is required by the 27th section, and yet if occupied by one family less than "eight," there would be no violation, and the seven families would be wholly deprived of the security and protection which the law has so benignly provided.

Perhaps the words, "occupied by or" are superfluous, and "built to contain" would have been sufficient; yet it seems to

me that the Legislature meant not to make a distinction between past and future erections (except in the single matter of notice), but to require those things to be done where the building was occupied by "*eight*" families, *or* built to contain that number of families. Had they intended otherwise, they would have used the conjunction "*and*," and not the disjunction "*or*."

The plain sense of this statute is, that a certain description of buildings shall contain designated contrivances, designed for the security of the lives of the occupants, and that the omission to provide such contrivances shall subject the owner to a penalty, after he has been notified.

The sole question, therefore, in this case is, was the defendant notified of the alleged violation?

I cannot persuade myself that the defendant, when he read this notice, knowing that the law required that his house must contain a fire-escape, did not fully understand that the violation referred to in the beginning of the notice, was the omission (either of himself or of his predecessor) to provide a fire-escape for his house. It informed him that his house was not provided with such contrivance, and he *knew* that this was a violation of the law. He was required to remove "a violation," which violation consisted in a building not provided with a practical fire-escape; and although more numerous and perhaps more apt words might have been used, they would, in my judgment, have failed to have been more significant of what constituted the alleged violation.

I can see no force in the suggestion, that the notice required the removal of the house. It cannot, by any interpretation I can give it, bear such construction. The house was not the offender, but the owner who had neglected to place in it what the law required should be placed in it. He might remove the house and thus remove the "violation," or he might put in a fire-escape. The question is not *how* he might remove the violation (which, perhaps, he may have done in a variety of ways), but whether he had notice of what violation he was required to remove.

In short, the defendant had notice to remove a "violation" of a provision of law; that such violation was, to wit, "a house not provided with a fire-escape." He knew this was a violation of the law, and he could not have understood that the

notice meant any thing else. In the language of Judge Denio, in Fire Department *a.* Buffum, "I am unable to see that it was possible for the defendant to be misled."

I am of opinion that the learned judge erred in sustaining the demurrer, and that the judgment dismissing the complaint should be reversed.

Order affirmed.

## GRISWOLD *a.* HAVENS.

*Supreme Court, First District; General Term, Oct.,* 1863.

IRREGULARITY.—JUDGMENT OF COURT OF APPEALS.—REMITTITUR.

A judgment entered in conformity with the remittitur from the Court of Appeals, cannot be treated as irregular by reason of any objection which might have been raised in that court.*

Appeal from an order denying a motion to set aside a judgment for irregularity.

This action was brought by Nathaniel L. Griswold against Langdon H. Havens and three others. The facts are sufficiently stated in the opinion. The motion below was based upon several alleged irregularities. Judgment had been perfected in the Supreme Court, March 24th, 1863, and the motion was not made till May of the same year: the defendants appealed.

*Skeffington Sanxay,* for the appellants.

*Stephen P. Nash,* for the respondent.—I. The alleged irregularities as to the form of the judgment, and that it was entered in disobedience of a stay of proceedings, are strictly technical, and in view of defendant's laches were properly disregarded.

* See, also, Jarvis *a.* Shaw, *infra.*